Robert J. Bach, Esq.
RB - 2751
60 East 42nd Street
40th Floor
New York, NY 10165
212-867-4455
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STUART DIAMOND

                              PLAINTIFF

          against

TREASURERS AND TICKER SELLERS UNION
LOCAL 751 PENSION FUND, THE
TRUSTEES OF THE TREASURERS AND
TICKET SELLERS UNION LOCAL 751
PENSION FUND, AND ROBERT CLEARY.

                           DEFENDANTS

-----------------------------------------------------------------X

INDEX NO.

05 CV 1937(KMW)

**FIRST AMENDED COMPLAINT**

**ECF CASE**

Plaintiff, by his attorney, Robert J. Bach, as and for the Complaint alleges:

### Introduction

1. This is a suit by a participant of Defendant Treasurers and Ticker Sellers Union Local 751 Pension Fund, ("Pension Fund"), to obtain proper pension credits and benefits. The Defendants credited Mr. Diamond with 14.5 years of credited service. Mr Diamond claimed that he was entitled to 15 years of credited service and that the defendants did not credit him with the correct service credit by, *inter alia,* improperly excluding vacation pay and holiday pay, improperly calculating his

EXHIBIT 1

service in fiscal years 1998 (September 1, 1997 through August 31, 1998) and 1982 (September 1, 1981 through August 31, 1982).

2. In addition, Defendant Pension Fund Manager and Trustee, Robert Cleary ("Cleary"), breached his fiduciary duties by affirmatively representing to Plaintiff that he had sufficient pension credits for an "early retirement pension" and also by preventing Plaintiff from working in union-covered employment and being able to accrue additional pension credits. Further, when Plaintiff claimed additional credited service, Cleary, as Fund Manager and Trustee, improperly denied Plaintiff's requests for additional credit.

3. As a result of Defendants' action, Plaintiff was denied an "early retirement pension" and was unable to apply for a "normal pension" (as those terms are defined in the Pension Fund plan documents).

4. Plaintiff sues to receive the pension benefits to which he is entitled and to be made whole for the interest and any other benefits that he would have been entitled to receive from the Fund as a consequence of the improper denial of his early retirement pension and/or normal pension.

## Jurisdiction

5. The court has jurisdiction of this matter pursuant to the Employee Retirement Income and Security Act of 1974, as amended, ("ERISA"), 29 USC sections 1132(a)(1)(B), 1132(a)(3) and 1132(e)(1) as well as 28 USC Sections 1331, 2201, and 2202.

## Venue

6. Venue is in the Southern District of New York because the Defendants have their offices in this district. 29 USC section 1132(e)(2) and 28 USC section 1391(a).

## The Parties

### The Plaintiff - Stuart Diamond

7. Stuart Diamond ("Diamond"), the plaintiff in this action resides in Hollywood, Florida.

8. Mr. Diamond was employed by employers obligated to make contributions to the Pension Plan and was a "participant" of the Pension Fund within the meaning of the ERISA, 29 USC § 1002(7).

### Defendants -

9. The Treasurers and Ticker Sellers Union Local 751 Pension Fund ("Pension Fund"), is an employee pension benefit plan within the meaning of ERISA, 29 USC § 1002(2).

10. The Trustees of the Pension Fund ("Trustees") are the plan sponsors of the Pension Fund within the meaning of ERISA, 29 USC § 1002 (16)(B) of the Fund.

11. Upon information and belief, the Trustees are fiduciaries of the Pension Fund, within the meaning of ERISA, 29 USC §1002(21)(A) of the Fund.

12. The Defendants have their offices as 1500 Broadway, New York, NY 10036.

13. Robert Cleary was at all relevant times, the Manager of the Pension Fund, and a Trustee of the Pension Fund. Cleary was a fiduciary of the Fund within the meaning of ERISA.

14. At all times relevant Cleary was the President of the Treasurers and Ticket Sellers Union Local 751 ("Union").

3

## Statement of Facts

Mr. Diamond's Work History

15. Mr. Diamond has worked under the jurisdiction of the Union from 1964 until 1998 (with a gap in service from 1972 until 1981 when he lived in California).

16. During that time period, Mr. Diamond worked sufficient days in covered employment to accrue at least 15 years of pension credits.

Mr. Cleary's Bias and Hostility

17. In early 1998, Mr. Diamond met with Mr. Cleary to, *inter alia*, see if there was any work available for him, make sure his name was on the availability list, and discuss his pension credits. Mr. Diamond told Mr. Cleary that as of the plan year ending August 31, 1997, he knew he had at least 14 ½ credits and that he was trying to accrue additional pension credits. Mr. Cleary told him that he already had a ½ credit for the plan year ending August 31, 1998 and that, with the credits he had previously accrued, he would have sufficient credits to file for an early retirement pension.

18. During 1997 and 1998 and beyond, Mr. Diamond continued to try to accrue pension credits.

19. In early 1998, Mr. Diamond was called by the treasurer of the NBA All Star show at the Javitz Center to work as Assistant Treasurer for the length of the show (which was to last at least 3 to 4 days). This job would have provided Mr. Diamond with additional days of service and also should have led to additional work for Mr. Diamond that would help him accrue additional pension credits. However, at the last minute, he was informed by the treasurer that, with no explanation given, Mr. Cleary demanded that his name be taken off the list.

4

20. Mr. Diamond immediately called the Union regarding the lost opportunity and was told that he "was too late" and there were no openings for that show. Mr. Diamond attended part of the show and learned that approximately 18 treasurers worked the show, including non-Union workers who were called after Mr. Diamond had been recruited and a former member who had been dropped from Union membership.

21. During his conversation with the Union regarding the NBA All Star Show, Mr. Diamond informed the Union that he wanted to make sure that he was on the availability list and that he wanted to work all future shows at the Javitz Center and at any other venues, including, for example, the circus at Madison Square Garden.

22. Despite making this request, Mr. Diamond was not offered any work by the Union. Indeed, when Mr. Diamond requested through the Union that he be allowed to work the "International Beauty Show" (which would last approximately 5 days) where again his services had been requested by the treasurer of the Javitz Center, Mr. Diamond was told that he was too late and that the work had already been assigned. When he again attended part of the Beauty Show, he observed that non-union workers were working the show as well as Mr. Cleary's brother, Tim Cleary, who already was employed at a Union job at Aqueduct Racetrack and thus, was receiving double pay and credit for his work at two venues on the same days.

23. After again being prevented from working when non-Union workers were being given the work, Mr. Diamond approached Mr. Cleary and asked to see the "availability list." Despite the fact that the constitution requires that this list be

5

made available to members, he was told that he could not see the list, that his name was on it but that "nobody wants you."

24. Mr. Diamond had other meetings with Mr. Cleary where he inquired about work and was told on other occasions that he was "not wanted anymore" in the industry and that no work was available for him.

25. During this same time period when Mr. Cleary told Mr. Diamond that "nobody wants you," Mr. Diamond had been repeatedly told by the treasurer at the Javitz Center that he would be hired for shows but for the Union's demand that he be taken off the work list.

26. Mr. Diamond continued to reach out to contacts in the industry but when his efforts continued to be rebuffed by Mr. Cleary, he relied upon the previous assurances that he received from Mr. Cleary that he had sufficient credit for an early pension benefit. Mr. Diamond was thus very surprised when he applied for early pension and was told that he did not have sufficient credits.

## First Cause of Action

## Breach of Fiduciary Duty - Misrepresentation of Pension Credits

27. Pension Fund Manager and Trustee, Robert Cleary, affirmatively misrepresented to Mr. Diamond that he had sufficient pension credits for an early retirement pension (which requires that a participant have at least 15 pension credits).

28. As a result of Mr. Cleary's actions, Mr. Diamond has suffered actual losses and damages, including but not limited to, his being refused an "early retirement pension" and a "normal pension," as those terms are defined in the Plan.

6

29. Defendant Cleary breached the fiduciary duty he owed to the Plaintiff to accurately report to the Plaintiff's accruals in violation of ERISA, 29 USC 1104(a)(1)(B)

## Second Cause of Action

### Interfering with Plaintiff's Right to a Benefit

30. Plaintiff restates paragraph 1- 29 as though restated herein.

31. In addition to affirmatively misrepresenting to Mr. Diamond that he had sufficient pension credits (*i.e.*, at least 15 pension credits), Mr. Cleary, who was then not only Fund Manager and Trustee of the Pension Fund but also was President of the Union, actively and knowingly prevented Mr. Diamond from working in union-covered employment and thus prevented him from being able to accrue additional days of service and/or additional pension credits.

32. Mr. Cleary's actions breached his fiduciary duties as Fund Manager and Trustee under the Pension Plan.

33. As a result of Mr. Cleary's actions, Mr. Diamond has suffered actual losses and damages, including but not limited to, his being refused an "early retirement pension" and a "normal pension," as those terms are defined in the Plan.

34. As a result of Mr. Cleary's actions in preventing Mr. Diamond from working in union-covered employment, Mr. Diamond was prevented from accruing additional pension credits and was prevented from continuing to work when he would have qualified for a "disability pension" as that term is defined in the Plan.

35. Mr. Cleary's action toward the Plaintiff continued through the claims process and as Fund manger and Trustee discriminated against Mr. Diamond for attempting to

7

exercise his rights to which he was entitled under the provisions of the plan, in violation of section 510 of ERISA, 29 USC §1140.

### Third Cause of Action

### Failure to Properly Credit Vacation Pay in Violation of 29 CFR 2530.200b-(2)(b)

36. Plaintiff restates paragraphs 1-35 as though restated herein.

37. To receive an early retirement pension, the Pension Fund requires that a participant be 57 years old and have 15 years of service credits.

38. On or about January 15, 1999, Mr. Diamond applied for an early retirement pension.

39. On January 30, 1999, Mr. Diamond would have been 57 years old.

40. By letter dated January 29, 1999, Robert Cleary, Fund Manager and Trustee advised Mr. Diamond that he had only 14-1/2 years of service credits and therefore was not eligible for an early retirement pension.

41. By letter dated April 20, 1999, Mr. Diamond's counsel at the time wrote a letter to Fund's Counsel stating that Mr. Diamond did not get full credit for 1982 because the Fund improperly excluded his vacation pay. He further asserted that if the vacation pay were included he would have the requisite number of days to get full credit for that year.

42. By letter dated May 3, 1999, Fund Counsel replied stating, inter alia, that "in lieu of paid vacations, employee receive an additional 6% compensation each week", and that" there was no 'paid vacation time' to be credited for pension purposes." The letter also stated that "Mr. Diamond may also wish to appeal the Fund Manager's decision to the Board of Trustees, pursuant to Section 13.2 of the pension Plan."

43. On June 18, 1999, Mr. Diamond sent a letter to Irving Cheskin, a member of the Board of Trustees appealing the refusal of the Pension Fund to award him his proper pension credits. Mr. Diamond challenged his failure to receive full credit for 1982, 1997 and his credit for pre 1982 service.

44. By letter dated July 9, 1999, fund counsel acknowledged that the Trustees had received his letter to Trustee Cheskin and that the Trustees had referred it to fund counsel.

45. By letter dated July 23, 1999, Fund Counsel replied in substance to Mr. Diamond's letter to Mr. Cheskin, denying the appeal and explaining why the Fund believed he was not entitled to credit for the compensation in lieu of vacation pay and how the Fund calculated that he was only entitled to 14 ½ service credits. The letter also advised Mr. Diamond again of his right to appeal to the Trustees, not withstanding his prior appeal to the Trustees.

46. By letter dated September 12, 1999 Mr. Diamond's attorney then renewed his client's request for additional information and also emphasized that the copy of the collective bargaining agreement that had been furnished was unclear and specifically renewed his request for a clear copy of that document.

47. By letter dated October 1, 1999, Fund Counsel offered to make the information available and invited Mr. Diamond to submit additional information to the Fund Trustees.

48. Mr. Diamond, by an undated letter to Mr. Cheskin requested that the Trustees make a final determination.

49. There was no response to that letter and the Trustees have never made any further decisions regarding his appeal.

9

50. The defendants breached their fiduciary duty to plaintiff, in violation of ERISA, 29 USC section 1104(a)(1)(D) because they improperly excluded vacation pay for purposes of crediting service in violation of Department of Labor Regulations, 29 CFR 2530.200b - (2)(B)

51. Pursuant to ERISA, 29 USC section 1132(a)(1)(B), the Plaintiff sues to recover benefits due to him under the terms of the Plan, and requests that the Court determine, *de novo*, that he is entitled to have his vacation pay separately credited for purposes of determining his days of credited service.

## Fourth Cause of Action

### Improper Calculation of Service for Fiscal 1998

52. Plaintiff restates paragraphs 1- 51 as though restated herein.

53. In or around 2001, Mr. Diamond requested that the Pension Fund provide him with full credit for work he provided at Radio City Music Hall ("Radio City") in 1997. Mr. Diamond worked at Radio City for 10 weeks in the last quater of 1997 (October 14, 1997 through December 22, 1997), and is entitled to at least 59 days of pension credit for that work in the 1998 plan year .

54. While working at Radio City, Mr. Diamond worked at least 5 days per week, one of which was a "double shift." By working a "double shift," employees would work the equivalent of two days' work in one day in order to have two days off. It is common in this industry in union-covered employment to structure work schedules in this manner to provide an additional day off. When work is scheduled in such a manner, employers make contributions – and employees receive credit – for the additional shift.

10

55. In a letter dated January 24, 2002, counsel for the Pension Fund denied Mr. Diamond's request for additional service credit finding that "he would not have worked more than 50 days" for Radio City based upon the box office scheduler's "estimate" that "Mr. Diamond worked no more than 50 days" during 1997. Counsel for the Pension Fund added that the Union Trustees "concur with Radio City's estimate".

56. By letter dated July 24, 2002, counsel for Mr. Diamond made a formal request for benefits, challenging the *estimated* days of service that were being awarded to Mr. Diamond for the work he performed for Radio City.

57. By letters dated August 6, 2002 and August 14, 2002, the Pension Fund denied Mr. Diamond's request for a proper accounting of his pension credits from the service he performed at Radio City and denied his request for an early pension benefit.

58. The Pension Fund's assumption that Mr. Diamond worked no more than 50 days for Radio City in 1997 conflicts with the Pension Fund's own computer records which credited Mr. Diamond with 56 days credited service. Also, The calculation of credited service should have also included the three days for holiday pay.

59. The Fund also failed to credit Plaintiff's work for 2 days at the Javits Center (Stella Productions),allegedly because Stella was not required to make contributions to the Fund.

60. The Fund also failed to credit Mr. Diamond's compensation for vacation pay as alleged in the Third Cause of Action.

61. The Defendants breached the fiduciary duty to the Plaintiff because they denied Plaintiff's claim for benefits for reasons contrary the terms of the Plan and the

11

manner in which it was administered and he should have been credited with at least 61 days for the 1998 plan year. 29 USC 1104(a)(1)(D).

62. Pursuant to ERISA, 29 USC section 1132(a)(1)(B), the Plaintiff sues to recover benefits due to him under the terms of the Plan, and requests that the Court determine, de novo, that he is entitled to 56 days of benefit service for the 1998 plan year.

### Fifth Cause of Action
### Failure to Credit 1982 Service

63. Plaintiff restates paragraphs 1-62 as though restated herein.

64. Mr. Diamond worked in the industry from 1964 through 1972 and received pension credit for that service. He then left the industry and returned in 1982 and worked until 1998 and has over 15 years of credited service.

65. The 1995 Summary Plan Description, provides that:

    An Employee shall in any event be credited with a year of Vesting Credit for the Fiscal Year in which he became a Participant if he failed to complete either in that year or the preceding Fiscal Year the 100 days otherwise required. This shall apply upon initial participation, and if there has been a Break in Service, upon a subsequent entry into participation.

66. Pursuant to this rule, the Defendants should have given Mr. Diamond credit for 100 hours for 1982.

67. The Trustees failure to give Mr. Diamond full credit for his service for 1982 was a breach of the fiduciary duty that Defendants owed to Mr. Diamond pursuant to 29 USC 1104(a)(1)(B) and (D).

12

68. Pursuant to ERISA, 29 USC section 1132(a)(1)(B), the Plaintiff sues to recover benefits due to him under the terms of the Plan, and requests that the Court determine, *de novo*, that he is entitled to benefits under the terms of the Plan.

### Sixth Cause of Action

### Improper Calculation of Days Worked in Plan Year 1982

69. Plaintiff Restates paragraphs 1 - 68 as though restated herein.

70. By letter dated June 13, 2003 Plaintiff filed a claim for a full year of service (100 hours) for 1982 based on his service with four union employers, totaling 136 days of credited service:

| | | |
|---|---|---|
| 4/Q 1981 | Nancy Enterprises Inc.<br>Eugene O'Neill Theater - "Annie" | 59 days |
| 1/Q 1982 | Nancy Enterprises Inc.<br>Eugene O'Neill Theater - "Annie", "Little Me" | 58 days |
| Apr 1982 | Roosevelt Raceway | 1 day |
| Feb/Mar. 1982 | Yonkers Raceway | 4 days |
| Aug. 1982 | West Side Tennis | 9 days |

71. By letter dated June 23, 2003, Fund Counsel, based on her review with Mr. Cleary reported that reported that Nancy Enterprises was a Los Angeles Company and not under contract with the New York Union and that Annie never played at the Eugene O'Neill. Fund Counsel also reported that West Side Tennis was not required to make Fund contributions. Accordingly, the claim was denied.

72. By letter dated July 15, 2003, Plaintiff's counsel provided information that "Annie" played at the Eugene O'Neill during the last quarter of 1981 and the first quarter of 1982.

13

73. By letters dated August 19 and 25, 2003, Fund Counsel again rejected the claim. However, this time the rejection stated that Mr. Diamond only could receive credit for the work corresponding to the dates "Annie" and "Little Me" were playing at the Eugene O'Neill, and not include the other time prior to or after the playing dates. She also reported that the Fund Manager stated that there would be no credit for the West Side Tennis, Roosevelt and Yonkers Raceway work because contributions were not required by the collective bargaining agreements.

74. By letter dated October 31, 2003. Mr. Diamond's counsel appealed the denial. The appeal noted the error in the Fund Manager's position about "Annie" and further noted that Mr. Diamond was not being credited with pre and post performance work, and further demonstrated, that using union scale, Mr. Diamond had earned the days as claimed. Counsel also requested copies of the collective bargaining agreements where it was asserted that no pension contributions were due( West Side Tennis, Roosevelt Raceway and Yonkers Raceway.

75. By letter dated December 11, 2003, the appeal was denied by the Trustees. Using union documents, not fund documents, to substantiate the initial denial, the Trustees determined that pension calculations were correct, and that Mr. Diamond would not receive the credit he had requested.

76. Pursuant to ERISA, 29 USC section 1132(a)(1)(B), the Plaintiff sues to recover benefits due to him under the terms of the Plan, and requests that the Court determine, *de novo*, that he is entitled to a full year of credit for his 1982 service under the terms of the Plan.

## Seventh Cause of Action

## Failure to include service credit from Plan Years 1964 to 1972

77. Plaintiff restates paragraphs 1-76 as though restated herein.

78. Plaintiff earned six years of Service Credit from plan years 1964 through 1972.

79. Section 2.4(a) of the Plan provides:

    The continuity of Future Service Credit shall be considered broken and all Service Credit shall be cancelled if, after September 1, 1962 and before September 1, 1976, an Employee did not earn at least one year of Future Service Credit in any period of 3 consecutive Fiscal Years. (But see subdivision "(d)" of this section 2.4 for an exception).

80. Section 2.4(d) of the Plan provides:

    Exception: Once an Employee accumulated at least 15 years of Service Credit of which at least 3 years are Future Service Credit, the break rule set forth in paragraph "(a)" of Section 2.4 hereof did not operate to deprive him of his previously accumulated Service Credit.

81. In failing to award the Plaintiff a pension based on 15 years of Service Credit, the Trustees also improperly failed to include the prior service credit of six years (1964 through 1972) as required by section 2.4(a) and 2.4(d) of the Plan, in the calculation of his benefit.

### Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

  a. that the Court award Plaintiff declaratory and injunctive relief that Defendants violated Plaintiff's rights pursuant to ERISA;

  b. that the Court direct the Defendants to credit Mr. Diamond with the correct number of pension credits based on his at least 15 plus years of service;

c.  that the Court direct the Defendants to award Mr. Diamond his early retirement pension retroactive to February 1, 1999, with interest;

d.  that the Court direct that the Plaintiff receive from Defendants any other compensation or benefit that he would have be entitled to receive, and be made whole for any expenses that he has incurred, as a consequence of the improper denial of his early retirement pension;

e.  that, in the alternative, the Court award Plaintiff his "normal pension" retroactive to January 30, 2004 with interest, and that the Court direct that the Plaintiff receive from Defendants any other compensation or benefit that he would have be entitled to receive, and be made whole for any expenses that he has incurred, as a consequence of the improper denial of his normal pension;

f.  that the Court enjoin the Defendant's from interpreting the Plan to exclude vacation pay and direct them to make whole all participants and beneficiaries whose benefit calculation was made using the method currently used by the Defendants;

g.  that the Court order that the Defendant's include Mr. Diamond's prior service credit from plan years 1964 through 1972, to be included in the calculation of his benefit.

h.  that the Court order the Defendants to restore and make good all loss of benefits to Plaintiff that resulted from Defendants' breach of fiduciary duty;

16

    i.      that the Court award pre-judgment and post-judgment interest at the maximum legal rate as provided by law;

    j.      that the Court award reasonable attorney's fees and costs of this action pursuant to ERISA 29 USC Section 1132(g);

    k.     and that the Court award such other and further relief as the Court may deem just and proper.

New York, NY  
August 22, 2005

*/s/ Robert J. Bach*  
Robert J. Bach (RB 2751)  
60 East 42nd Street  
40th Floor  
New York, NY 10165  
212 - 867 - 4455  
Attorney for Plaintiff