PROSKAUER ROSE LLP
Myron D. Rumeld (MR-3941)
1585 Broadway
New York, New York 10036
(212) 969-3021
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
STUART DIAMOND,                                                   :
                                                                  :
                         Plaintiff,                               :
                                                                  :
        -v-.                                                      :
                                                                  :    05 CV 1937 (PAC)
TREASURERS AND TICKET SELLERS UNION                               :    ECF CASE
LOCAL 751 PENSION FUND,                                           :
THE TRUSTEES OF THE TREASURERS AND                                :
TICKET SELLERS UNION                                              :
LOCAL 751 PENSION FUND,                                           :
AND ROBERT CLEARY,                                                :
                                                                  :
                         Defendants.                              :
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S CROSS-MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

    I.    DIAMOND IS NOT ENTITLED TO ANY ADDITIONAL RELIEF ON HIS SECTION 510 CLAIM THAT WAS NOT ALREADY AWARDED IN CONNECTION WITH HIS BENEFIT CLAIM ................................................................................3

    II.    DIAMOND'S CLAIM UNDER SECTION 510 IS UNSUSTAINABLE ON THE MERITS. ...........................................................7

        A.    Statute of Limitations ............................................................................7

        B.    Section 510 Does Not Encompass an Alleged Failure to Hire ....................9

        C.    No Allegation of Intent to Interfere with Pension Benefits ........................10

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

Becker v. Mack Trucks, Inc.,
 281 F.3d 372 (3d Cir. 2002)..................................................................................9, 10

Blessing v. J.P. Morgan Chase & Co.,
 No. 02 Civ. 3874, 2005 U.S. Dist. LEXIS 36974 (S.D.N.Y. Aug. 3, 2005) ......................10

Bush v. Fordham Univ.,
 452 F. Supp. 2d 394 (S.D.N.Y. 2006).......................................................................3

DePace v. Matsushita Elec. Corp. of Am.,
 257 F. Supp. 2d 543 (E.D.N.Y. 2003) ....................................................................6, 7

Dister v. Continental Group, Inc.,
 859 F.2d 1108, 1111 (2d Cir. 1988)..........................................................................10

Great-West Life & Annuity Ins. Co. v. Knudson,
 534 U.S. 204 (2002)..........................................................................................4, 5, 6

Kishter v. Principal Life Ins. Co.,
 186 F. Supp. 2d 438 (S.D.N.Y. 2002).......................................................................5, 6

Mertens v. Hewitt Assocs.,
 508 U.S. 248 (1993)................................................................................................5

Millsap v. McDonnell Douglas Corp.,
 368 F.3d 1246 (10th Cir. 2004) ...............................................................................5

Pelosi v. Schwab Capital Mkts., L.P.,
 05 CIV 9108, 2006 U.S. Dist. LEXIS 85237 (S.D.N.Y. Nov. 17, 2006)..........................4

Pereira v. Farace,
 413 F.3d 330 (2d Cir. 2005), cert denied, 126 S. Ct. 2286 (2006) ....................................6

Pollard v. E. I. du Pont de Nemours & Co.,
 532 U.S. 843 (2001)................................................................................................6

Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.,
 03 CV 6489L, 2007 U.S. Dist. LEXIS 1397 (W.D.N.Y. Jan. 8, 2007)..............................3

Romano v. Verizon Commc'n, Inc.,
 No. 01 Civ. 6737, 2005 U.S. Dist. LEXIS 185 (S.D.N.Y. Jan. 4, 2005)............................9

<u>Sandberg v. KPMG Peat Marwick, LLP</u>,
    111 F.3d 331 (2d Cir. 1997) .............................................................................................. 7

<u>Sereboff v. Mid Atl. Med. Servs., Inc.</u>,
    126 S. Ct. 1869 (2006) ....................................................................................................... 5

<u>Strom v. Goldman, Sachs & Co.</u>,
    202 F.3d 138 (2d Cir. 1999) .............................................................................................. 6

<u>Titsch v. Reliance Group, Inc.</u>,
    548 F. Supp. 983, 985 (S.D.N.Y. 1982), aff'd without op.,
    742 F.2d 1441 (2d. Cir. 1983) ......................................................................................... 10

<u>Wharton v. Duke Realty, LLP</u>,
    06 Civ. 6937, 2006 U.S. Dist. LEXIS 94116 (S.D.N.Y. December 22, 2006) .................. 5

<u>Williams v. Am. Int'l Group, Inc.</u>,
    No. 01 Civ. 9673, 2002 WL 31115184 (S.D.N.Y. Sept. 23, 2002) ................................... 9

**STATUTES**

29 U.S.C. § 1140 ............................................................................................................................. 1

## **PRELIMINARY STATEMENT**

In his motion for reconsideration, Diamond correctly points out that, in its August 22, 2006 decision ("Order"), the Court declined to consider the merits of his claim under Section 510 of ERISA, 29 U.S.C. § 1140, but completely mischaracterizes the consequences of that determination. The Court correctly concluded at the time that it need not address the Section 510 claim because the only relief sought for that claim was the same relief that the Court had already awarded in connection with Diamond's benefit claim: an Early Retirement Pension. (Order at 21) The Normal Pension to which Diamond makes reference in his moving papers was merely sought as an alternative form of relief, in the event that he was not awarded an Early Retirement Pension; and the complaint makes no mention of a Disability Pension, which Diamond now references for the first time. (See Pl.'s First Am. Comp. at 15-17)

What Diamond is really seeking now is additional compensation and/or additional pension credit for work never performed. As such, his claim for relief is not properly directed at the Plan, which is already paying Diamond whatever relief he is entitled to under the terms of the Plan.[1] Moreover, since neither of the defendants was Diamond's employer and thus neither was in a position to employ Diamond, the relief demanded is clearly compensatory in nature and, as such, is not available under ERISA, which limits recovery on Section 510 claims to equitable relief.

Reconsideration of Diamond's Section 510 claim would in any event be futile, since the claim would be dismissed for the various reasons that were previously asserted in support of

---

[1] This would be true regardless of the outcome of Defendants' motion for reconsideration. Whether or not Diamond is awarded more than the 14 1/2 credits he originally received, and whether or not Diamond is awarded an Early Retirement Pension, he would not be entitled to any recovery from the Plan that goes beyond the benefits that he qualifies for under the terms of the Plan, as evaluated by the Court.

Defendants' original motion for summary judgment. (See Def. Mem. Summ. J. at 10-11, 12-15)[2] First, the claim is time-barred, as Plaintiff's counsel virtually conceded at oral argument on motion for summary judgment. Second, Section 510 does not encompass an alleged failure to hire, as opposed to a termination of employment, particularly where the defendant is not the employer. Third, notwithstanding the Court's finding that defendant Cleary's alleged malice toward Diamond supported a de novo review of his benefit claim (Order at 11-13), there are no facts or circumstances to support a finding that Cleary was motivated by an intention to deprive Diamond of work specifically on account of his potential entitlement to benefits. (See Def. Mem. Summ. J. at 14-15) The only evidence on this issue indicates that Cleary was motivated to keep Diamond from working because Diamond was fired for suspicion of theft. (Order at 4; Ex. 7 to the Feb. 12, 2007 Supplemental Affidavit of Myron D. Rumeld ("Rumeld Supp. Aff.") at 93-99, 137-38)[3] Nor does the evidence support a finding that Cleary was deprived of any credit that was not ultimately awarded to him. To the contrary, notwithstanding the alleged inconsistencies in the Fund's position, the record – when fully considered – confirms that all of Diamond's claims for additional credit were fully investigated by Cleary and Fund's counsel; that Diamond was ultimately given the benefit of the doubt on all unresolved issues; and that the finding that Diamond was not entitled to additional service credit was based on well-documented evidence in the administrative record.

---

[2] Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment shall be referred to as "Def. Mem. Summ. J." Defendant's Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment shall be referred to as "Def. Reply Mem. Summ. J." Plaintiff's Memorandum of Law in Support of Plaintiff's Request for Reconsideration shall be referred to as "Pl. Mem. Recons." Defendant's Memorandum of Law in Support of Defendant's Motion for Reconsideration shall be referred to as "Def. Mem. Recons."

[3] For the Court's convenience, the documents referenced in this brief that were previously annexed to the affidavits and memoranda of law filed in the parties' cross-motions for summary judgment and that were not provided with the January 16, 2007 Affidavit of Myron D. Rumeld, have been annexed to the February 12, 2007 Supplemental Affidavit of Myron D. Rumeld.

Accordingly, the Court should deny Plaintiff's motion for reconsideration of its order insofar as it declined to consider the merits of his Section 510 claim or, alternatively, should now dismiss that claim on the merits.

I

**DIAMOND IS NOT ENTITLED TO ANY ADDITIONAL RELIEF ON HIS SECTION 510 CLAIM THAT WAS NOT ALREADY AWARDED IN CONNECTION WITH HIS BENEFIT CLAIM**

Diamond's motion for reconsideration is predicated on the notion that there is relief, separate and apart from the relief sought and obtained in connection with his benefit claim, to which he would be entitled if he prevailed on his Section 510 claim. In somewhat contradictory fashion, he seeks: "front pay through January 30, 2007, the date he would be able to obtain a normal retirement benefit;" or "partial reinstatement with accrued benefits from January, 1998 through February, 2000 since Diamond received a Social Security Disability Award with an onset date of February, 2000," which "will permit him to retire with a disability retirement benefit." (Pl. Mem. Recons., at 10)

Diamond's motion should be rejected out of hand, since the relief that he is now seeking under his Section 510 claim, and which serves as the rationale for the motion, was never requested before. (See Pl.'s First Am. Comp. at 15-17; see also Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., No. 03 Civ. 6489L, 2007 U.S. Dist. LEXIS 1397, at *11 (W.D.N.Y. Jan. 8, 2007) ("[A] plaintiff may not use a memorandum of law or similar paper to assert a claim that is not contained in the complaint."); Bush v. Fordham Univ., 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) ("courts in this District have consistently ruled that it is 'inappropriate to raise new claims for the first time in submissions in opposition to summary judgment'") (citations omitted)) Although Diamond references Sections e, g, and j of the Amended Complaint's

3

demand for relief (Pl. Mem. Recons. at 9), the only relief specifically referenced in those provisions is an award of a "Normal Pension," and this relief was demanded only as an alternative remedy in the event Diamond was not awarded an Early Retirement Pension.[4] (See Pl.'s First Am. Comp. at 16, item "e") No mention is made of front pay or a disability pension. (See id. at 15-17) These requests are clearly being made after-the-fact, undoubtedly because Diamond is now dissatisfied with the relief he obtained under the Court's decision.

Even if the Court were to consider Diamond's untimely demands for additional relief, the relief demanded would be unavailable as a matter of law. Diamond purports to be seeking front pay or reinstatement, relief that may be obtained, if at all, only from a former employer, which, under normal circumstances, would be the defendant in a Section 510 suit. See Pelosi v. Schwab Capital Mkts., L.P., No. 05 Civ. 9108, 2006 U.S. Dist. LEXIS 85237, at *16 (S.D.N.Y. Nov. 17, 2006) ("The Second Circuit has stated that ERISA § 510 'was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'") (citations omitted). Insofar as such relief is sought from the Defendants – a pension fund and a union official/plan administrator – it is unavailable under ERISA.

As Diamond acknowledges, the scope of relief available under ERISA has been carefully circumscribed by the United States Supreme Court in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002). Knudson, as well as related Supreme Court cases, have narrowly construed the meaning of "equitable relief" in claims brought under Section 502(a)(3) of ERISA,

---

[4] "An Early Retirement Pension is calculated in the same way as a Normal Pension, based on your Service Credits and the Benefit Rate in effect when you retire. If you wait until age 62 to start receiving your benefit, you will receive the full Normal Pension amount. However, if you receive your benefit early, payments will be reduced by 5/9 (.5556) of 1% for each month that payments are made before age 62." (Ex. 1 to Rumeld Supp. Aff. at D000017) Therefore, if the Court were to award Diamond an Early Retirement Pension, it would be unnecessary, and against the terms of the Plan, for the Court to also award him a Normal Pension.

4

the statutory vehicle for a cause of action for a violation of Section 510. See Knudson, 534 U.S. at 210 ("the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity")(citations omitted); Sereboff v. Mid Atl. Med. Servs., Inc., 126 S. Ct. 1869, 1873-74 (2006) (reviewing the analysis of equitable remedies in Knudson and Mertens v. Hewitt Assocs., 508 U.S. 248 (1993), and explaining that restitutionary relief is available only on a theory of a constructive trust or equitable lien that can be placed on funds that are specifically identifiable and separate from the defendants' general assets); Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1247 (10th Cir. 2004) ("Section 502(a)(3) of ERISA provides the plan participant with his exclusive remedies for a § 510 violation").  As Knudson and its progeny make clear, plan participants may not recover compensatory or legal forms of restitutionary relief under this provision, nor may they do so by re-characterizing as equitable what otherwise would be treated as compensatory or legal restitutionary relief.  See Wharton v. Duke Realty, LLP, No. 06 Civ. 6937, 2006 U.S. Dist. LEXIS 94116, at *24 (S.D.N.Y. December 22, 2006) ("the inadequacy of relief under 502(a)(1)(B) does not transform what is, at bottom, a claim for compensation for defendants' breach of her Employment Agreement into a claim for equitable restitution").

     As Diamond also acknowledges (see Pl. Mem. Recons. at 10), by virtue of Knudson and its progeny back pay is not available under ERISA.  See Millsap v. McDonnell Douglas Corp., 368 F.3d at 1260 ("[p]laintiffs' freestanding claim for backpay – legal relief – is accordingly precluded by § 502(a)(3)'s plain terms"); Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 445 (S.D.N.Y. 2002)(stating that, in Knudson, the Supreme Court determined that back pay "is not an equitable remedy in itself") (citation omitted).  The same would be true for benefit accruals that were not earned because of an alleged wrongful failure to hire.  In either case, the

5

relief is clearly compensatory in nature. Kishter, 186 F. Supp. 2d at 445-46 (refusing to permit recovery from the employer of monetary relief corresponding to the value of benefits lost due to the employer's misrepresentation of eligibility for life insurance benefit); see also Pereira v. Farace, 413 F.3d 330, 340 (2d Cir. 2005) (stating that Knudson "reconfigured the legal landscape of restitution" and overruled the Second Circuit decision in Strom v. Goldman, Sachs & Co., 202 F.3d 138 (2d Cir. 1999), which had allowed recovery of monetary relief where employer's fiduciary breach prevented participant from qualifying for benefits), cert denied, 126 S. Ct. 2286 (2006).

Diamond cannot avoid this result by characterizing his claim as one for reinstatement or front pay in lieu of reinstatement. First, since neither of the defendants was Diamond's employer, they simply are not able to reinstate him, or to award front pay. Any relief obtained from these defendants would merely be a payment to compensate Diamond for his alleged inability to obtain work. As such, the relief would not be equitable in nature, but rather "'compensation for loss resulting from a legal duty.'" Kishter, 186 F. Supp. 2d at 445 (quoting Knudson, 534 U.S. at 210).[5] Second, Diamond is not seeking front pay, since the period for which relief is demanded is the period **through** 2007. (See Pl. Mem. Recons. at 10; Pollard v. E. I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001) ("Although courts have defined 'front pay' in numerous ways, front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement")). Any claim for benefits

---

[5] DePace v. Matsushita Elec. Corp. of Am., 257 F. Supp. 2d 543 (E.D.N.Y. 2003), cited by Diamond (Pl. Mem. Recons. at 9, 10), does not hold otherwise. Although the court permitted reinstatement, or recovery of front pay in lieu thereof, from an employer that provided incorrect pension benefit estimates to employees to entice them to accept a voluntary termination program and sign releases, it refused to permit plaintiffs to recover a payment in compensation for the value of the employment positions that they relinquished, finding that such relief would constitute the type of make-whole remedy foreclosed by Knudson. Id. at 563-68. Similar to the plaintiffs in DePace, Diamond seeks compensation for the value of the employment opportunities with which he alleges Cleary interfered, but as the court in DePace indicated, such compensatory damages are not available for a Section 510 claim.

after February 2000 is clearly overreaching since Diamond concedes that the Social Security Administration found him to be disabled and incapable of working from that point forward. (Pl. Mem. Recons. at 10)

In short, Diamond is not entitled to any relief on his Section 510 claim that was not already sought in connection with his claim for benefits.

II

### DIAMOND'S CLAIM UNDER SECTION 510 IS UNSUSTAINABLE ON THE MERITS

Diamond acknowledges that, to prevail on his Section 510 claim, he would be required to overcome several legal hurdles that were previously identified in Defendants' motion for summary judgment. Yet he has cited not one new authority or advanced any new grounds for distinguishing the authorities that Defendants previously cited, and which demonstrated conclusively that Diamond's Section 510 claim was unsustainable. Specifically:

A.  Statute of Limitations

Diamond has failed to demonstrate how his Section 510 claim would be timely, given the two year statute of limitations that governs such claims. See Sandberg v. KPMG Peat Marwick, LLP, 111 F.3d 331, 332-36 (2d Cir. 1997). The two arguments advanced – that the Second Circuit has not specifically addressed whether Section 510 claims need be exhausted, and that his Section 510 claim is intertwined with his benefits claim – were fully addressed in Defendants' motion papers. (See Def. Reply Mem. Summ. J. at 2-3) See also DePace v. Matsushita Elec. Corp. of Am., 257 F. Supp. 2d 543, 558 (E.D.N.Y. 2003) ("District courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a statutory ERISA violation"). When asked by the Court "why shouldn't the statute of limitations run so that

7

you're out of court now?" Diamond's counsel merely stated "I wasn't counsel at that point, I only came in in late 2001." (Ex. 6 to Rumeld Supp. Aff. at 42)

In the brief supporting his motion for reconsideration, Diamond endeavors to obfuscate the statute of limitations argument through a mischaracterization of his Section 510 claim. Even though the claim is targeted only at employment-related conduct – namely Cleary's alleged effort to prevent Diamond from obtaining a job at the Javits Center – Diamond makes repeated references to events relating to the administration of his claim for benefits. (Pl. Mem. Recons. at 5-6) Alleged defects in the administration of a claim for benefits are not actionable under Section 510, however. Rather, as the Court recognized, they are relevant only to determine the standard for review of the Plan's appeal determination. With respect to the employment-related conduct giving rise to Diamond's Section 510 claim, all relevant actions ended at the latest by late 1998, when Diamond concededly ceased looking for employment. (Affirmation of Stuart Diamond, ¶ 54)

There is, moreover, no evidence to support the conclusion that any alleged mishandling of the administration of Diamond's claim for benefits resulted in any loss of benefits. Diamond was provided with all information to which he was entitled[6]; his claims for additional service credit were all objectively investigated[7]; and the various alleged inconsistencies in the evaluation

---

[6] Despite the Court's impression that Cleary prevented Diamond from reviewing his records and obtaining requested documents (Order at 5), Diamond visited the Fund Office twice to review his pension records, was provided with copies of the documents which he requested, and thereafter was invited by the Fund's Counsel to meet at the Fund Office to further review his records. (See Ex. 2 to Rumeld Supp. Aff.) Ms. Corello continued to provide Diamond's counsel with requested documents. (See Ex. 5 to Rumeld Supp. Aff.) Even after extensive discovery, Diamond has not pointed to any information that was not provided to him.

[7] For example, notwithstanding the Court's impression that the Trustees relied solely on Cleary's representations to review Diamond's appeal without an independent investigation (Order 6-7), the Fund Office and the Fund's Counsel made several requests to Radio City to receive information regarding Diamond's service in 1998 (Exs. 3 and 4 to Rumeld Supp. Aff.) and also sought information from the Union's records. This information was among the various records reviewed by the Trustees in making their determination, which ultimately included the pension credit card, the union assessment record, contribution checks, paycheck sheets, paycheck stubs, scheduling sheets from Radio City, and Diamond's work history print-out. (Exs. 2, 5, 6 to the Jan. 16, 2007

8

of Diamond's claims for service credits were all ultimately resolved in Diamond's favor,[8] denied for reasons that were well-documented,[9] or determined not to have any impact on Diamond's entitlement to benefits. Thus, none of the events relating to Diamond's benefit claim could possibly support a claim under Section 510 for interference with his right to obtain benefits. The only allegations relevant to that claim are those related to his employment at the Javits Center, and, as such, his claim is time barred. (Ex. 6 to Rumeld Supp. Aff. at 42)

B. Section 510 Does Not Encompass an Alleged Failure to Hire

Diamond has not cited a single authority for the proposition that an alleged failure to hire, as opposed to a termination of employment, even if brought against the potential employer, is actionable under Section 510. See Becker v. Mack Trucks, Inc., 281 F.3d 372, 380-83 (3d Cir. 2002) ("if Congress intended that § 510 apply to hiring practices, it would have included the word 'hire' in the string of denominated employment practices"); Romano v. Verizon Commc'n, Inc., No. 01 Civ. 6737, 2005 U.S. Dist. LEXIS 185, at *11 (S.D.N.Y. Jan. 4, 2005) ("ERISA does not cover decisions related to hiring"); Williams v. Am. Int'l Group, Inc., No. 01 Civ. 9673, 2002 WL 31115184, at *3 (S.D.N.Y. Sept. 23, 2002) ("as the extensive inquiry of legislative intent undertaken by the Third Circuit indicates, Congress's comprehensive provision of

---

Aff. of Myron D. Rumeld) All of this information was also shared with Diamond or his counsel during the review process. (e.g., Exs. 2 and 4 to the Jan. 16, 2007 Aff. of Myron D. Rumeld)

[8] For example, even though the Fund Office suspected that Diamond may have been credited in error, such as for his work at the Roosevelt and Yonkers Raceway, the Fund granted Diamond the benefit of the doubt and counted such days towards his credited service. (Ex. 5 to the Jan. 16, 2007 Aff. of Myron D. Rumeld at PD0094)

[9] For example, as discussed more fully in the brief supporting Def. Mem. Recons. at pages 2-6, the determination that Diamond was not entitled to additional days of credit for his work at the Eugene O'Neill Theatre was based in part on an evaluation of the union assessment record, which confirmed that Diamond earned the income reported by the Social Security Administration within the number of days credited to him. Moreover, when the Trustees realized that Diamond had been accidentally treated as starting work at Radio City on October 14, 1997, and that all primary documents indicated that he actually started on October 24, 1997, his pension record was corrected accordingly. (Ex. 6 to the Jan. 16, 2007 Aff. of Myron D. Rumeld at D000658-59)

safeguards to protect existing employment relationships does not indicate that it intended to regulate the hiring process or hiring decisions") (citing Becker, 281 F.3d at 382). Instead, Diamond references a portion of the Court's decision for purposes of contending that the Court validated his assertion that Cleary acted to terminate his employment. (Pl. Mem. Recons. at 5) When read in context, however, the Court merely found that there was evidence that Cleary had acted to prevent Diamond from being hired. (Order at 4-5) Whether or not Ron Argenzio offered Diamond a job at the Javits Center, it is clear that Diamond never began work on that job. (Order at 4) Thus, at best Diamond has asserted a claim that Cleary wrongfully prevented him from obtaining employment.

### C. No Allegation of Intent to Interfere with Pension Benefits

Finally, Diamond has failed to allege any facts and circumstances from which the Court could reasonably conclude that Cleary's alleged conduct was intended to deprive him of pension benefits. See Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) ("'no ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment'")(quoting Titsch v. Reliance Group, Inc., 548 F. Supp. 983, 985 (S.D.N.Y. 1982), aff'd without op., 742 F.2d 1441 (2d. Cir. 1983)); see also Blessing v. J.P. Morgan Chase & Co., No. 02 Civ. 3874, 2005 U.S. Dist. LEXIS 36974, at *33 (S.D.N.Y. Aug. 3, 2005) ("To make out a prima facie case [of intentional interference with attainment of benefits] plaintiff must show that he was discharged under circumstances giving rise to an inference of discrimination, or that defendants committed a discriminatory act against him with the intent to interfere with his attainment of severance pay"). Diamond's assertion that the Court already validated this claim is incorrect. (Pl. Mem. Recons. at 8, 9) The Court merely concluded, on the basis of Diamond's allegations, that there was a

conflict of interest, resulting from Cleary's alleged ill will toward Diamond, that warranted de novo review of his benefit claim. (Order at 11-13) The Court never evaluated whether this ill will was motivated specifically by a desire to prevent Diamond from accruing pension credits, as opposed to, for example, a reaction to Diamond's suspected theft of Radio City tickets. Indeed, it was precisely because the Court did not address the merits of the Section 510 claim that Diamond filed his motion for reconsideration. (Pl. Mem. Recons. at 1)

In short, even if the Court were to find that a Section 510 claim is actionable against non-employer defendants and would afford relief beyond that already granted on the benefit claim, it should still dismiss this claim as a matter of law. As a result, Diamond's motion for reconsideration is futile.

## CONCLUSION

For the foregoing reasons, Diamond's motion for reconsideration to consider his Section 510 claim should denied or, alternatively, the Court should dismiss Diamond's Section 510 claim on the merits.

Respectfully submitted,

Dated: New York, New York
February 12, 2007

PROSKAUER ROSE LLP

By: /s/ Myron D. Rumeld
Myron D. Rumeld (MR-3941)
1585 Broadway
New York, NY 10036
(212) 969-3021
mrumeld@proskauer.com

Attorney for the Defendants